**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| CUMULUS MEDIA NEW HOLDINGS INC., Plaintiff, -against- THE NIELSEN COMPANY (US) LLC, Defendant. | X : : : : : : : : : : X | Case No.: 1:25-cv-08581 (JAV) |

**DEFENDANT NIELSEN'S RESPONSE IN OPPOSITION TO PLAINTIFF CUMULUS'S PRE-HEARING BRIEF IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION**

GIBSON, DUNN & CRUTCHER LLP

Jefferson E. Bell
Kathryn N. Salvaggio
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000

Josh Lipton (admitted *pro hac vice*)
1700 M Street, N.W.
Washington, D.C. 20036-5306
Telephone: (202) 955-8500

Samuel Liversidge (admitted *pro hac vice*)
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000

Scott K. Hvidt (admitted *pro hac vice*)
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
Telephone: (214) 698-3100

*Attorneys for The Nielsen Company (US), LLC*

# TABLE OF CONTENTS

INTRODUCTION ........ 1
ARGUMENT ........ 2
I. CUMULUS FAILS TO ESTABLISH ANY PRELIMINARY INJUNCTION REQUIREMENTS ........ 2
A. Cumulus's Supposed Harm Is Neither Irreparable Nor Imminent ........ 2
B. Cumulus's Claim Fails on the Merits ........ 6
C. The Balance Of Equities Favors Nielsen ........ 8
D. The Public Interest Favors Freedom Of Contract, Not Judicial Intervention ........ 9
II. CUMULUS'S REQUESTED RELIEF IS NOT THE STATUS QUO ........ 10
III. AN EVIDENTIARY HEARING REMAINS UNNECESSARY ........ 11

# TABLE OF AUTHORITIES

## Cases

*Am. Mfrs. Mut. Ins. Co. v. Am. Broad.-Paramount Theatres, Inc.*,
388 F.2d 272 (2d Cir. 1967)....................7

*Bank of Am., N.A. v. Won Sam Yi*,
294 F. Supp. 3d 62 (W.D.N.Y. 2018)....................9

*Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*,
96 F.4th 351 (2d Cir. 2024)....................2

*Empower Energies, Inc. v. SolarBlue, LLC*,
2016 WL 5338555 (S.D.N.Y. Sept. 23, 2016)....................10

*fuboTV Inc. v. Walt Disney Co.*,
745 F. Supp. 3d 109 (S.D.N.Y. 2024)....................1, 5

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
481 F.3d 60 (2d Cir. 2007)....................2

*Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*,
596 F.2d 70 (2d Cir. 1979)....................3, 5

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*,
555 U.S. 438 (2009)....................11

*Roso-Lino v. Coca-Cola Bottling Co. of N. Y., Inc.*,
Dkt. 60....................6

*Sperry Int'l Trade, Inc. v. Gov't of Israel*,
670 F.2d 8 (2d Cir. 1982)....................3

*St. Joseph's Hosp. Health Ctr. v. Am. Anesthesiology of Syracuse, P.C.*,
131 F.4th 102 (2d Cir. 2025)....................11

*Texaco Inc. v. Pennzoil Co.*,
784 F.2d 1133 (2d Cir. 1986)....................2, 6

*WGH Comm's, Inc. v. Penachio Malara LLP*,
2020 WL 8513509 (S.D.N.Y. Nov. 24, 2020)....................9

## INTRODUCTION

Cumulus seeks an extreme, unprecedented mandatory injunction requiring Nielsen to sell its data to Cumulus at prices several million dollars below Nielsen's offers. Cumulus cites no case that has ever enjoined a supplier to provide discounts to a customer. Even the cases Cumulus relies on make clear that Cumulus's requested relief is inappropriate. *See, e.g.*, *fuboTV Inc. v. Walt Disney Co.*, 745 F. Supp. 3d 109, 145 (S.D.N.Y. 2024) ("[C]ourts should avoid involving themselves in re-ordering the complexities of the ongoing contractual and business relationships among market participants. The Court is not a central planner."). Moreover, no injunctive relief is appropriate at all. [redacted], which makes Cumulus's purported harm monetary, and a preliminary injunction inappropriate.

To avoid that clear outcome, Cumulus invokes a narrow line of cases [redacted]. But Cumulus's own papers—and its public statements to shareholders—[redacted]. Cumulus's submission reveals a company deciding among many options to cut expenses, weighing the merits of investments, and [redacted]. None of these ordinary business decisions creates a basis to require Nielsen to subsidize Cumulus's investments or force Nielsen to bankroll continued operation of unprofitable operations. Nielsen did not cause—and itself suffers from—the secular decline of the radio industry. And Nielsen did not cause Cumulus to incur debt or invest poorly.

Regardless, "[redacted]" requires Cumulus to [redacted] "rapidly produce a catastrophe of major proportions." *See e.g., Texaco Inc. v. Pennzoil Co.,* 784 F.2d 1133, 1152 (2d Cir. 1986). No such evidence is in the record. Indeed, *after* Cumulus filed for a preliminary injunction, Cumulus told its shareholders—presumably in compliance with applicable securities laws—that it was "confident" in its "long-term success." *See* Dkt. 78-2. In any event, the "[redacted]" exception has never resulted in a remedy beyond maintaining the status quo. No court has granted the sort of mandatory price-drop Cumulus seeks here, which would alter the last "uncontested status" between the parties: the existing contract. *See Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, 96 F.4th 351, 356 (2d Cir. 2024). Similarly improper are Cumulus's vague requests for Nielsen to "immediately negotiate"—unnecessary as Nielsen is and always has been negotiating with Cumulus—or accept a court-written contract requiring "Nielsen [to] provide Nationwide and local radio ratings data in markets Cumulus selects at the current contract rates." *See* Dkt. 60 at 3.

Moreover, Cumulus fails to carry its heavy burden on the other three preliminary injunction elements. It cannot establish it will likely succeed on the merits because Nielsen has not harmed competition. And it fails to demonstrate why Cumulus's poor business practices tip the equities in its favor. Dkt. 60 at 23-25. Finally, there is no need for an evidentiary hearing (Cumulus does not argue otherwise in its brief): a "finding of no showing of irreparable harm is dispositive." *See Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 68 (2d Cir. 2007).

## ARGUMENT

## I. CUMULUS FAILS TO ESTABLISH ANY PRELIMINARY INJUNCTION REQUIREMENTS

### A. Cumulus's Supposed Harm Is Neither Irreparable Nor Imminent

Cumulus's purported "irreparable" harm here is solely economic and does not warrant application of [redacted]. *See Sperry Int'l Trade, Inc. v. Gov't of Israel*, 670 F.2d 8, 12 (2d Cir. 1982) (describing [redacted] precedent as "exceptional cases"). Cumulus will [redacted]. Nor will this contract dispute "entrench Nielsen's dominance" or "harm[] competition and customers." Dkt. 60 at 17-18.

**1. Cumulus's Purported Monetary Harm Is Not Irreparable**

As of [redacted] [redacted]. *See* Dkt. 70-22 at 2 ([redacted]); Dkt. 70-10 at 200:17-201:16 (Cumulus 30(b)(6)). [redacted]. Dkt. 70-19. [redacted], Cumulus *filed suit later that day*. Dkt. 1.

Economic harm is not irreparable. *See Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979). That is presumably why Cumulus asserts it would "lose revenue, market share and goodwill with advertisers, advertising agencies, content and service providers, and local stations," should it lose access to Nationwide. Dkt. 60 at 7. But [redacted] Dkt. 70-22 at 8. Regardless, Cumulus's claimed harm is speculative and finds scant support in the record. For example, the singular advertising agency declaration cryptically states it "would be very challenging to justify buying advertising from a network…if [it] has incomplete Nielsen[] national ratings data," but stops short of saying it would drop Cumulus. Dkt. 61-2, Small Decl.

¶5. Moreover, Cumulus does not demonstrate how the loss of one customer would cause irreparable harm or would not be compensable through damages.

**2. Cumulus Is Not [redacted]**

Recognizing its Complaint and initial motion do not show irreparable harm, Cumulus [redacted] Dkt. 60 at 14-15. [redacted]—only the Court crafting a new contract will suffice. *Id.* Not so.

*First*, Cumulus's contemporaneous documents show its situation is not so dire. It has annual revenues of over $700 million. Dkt. 78-31 at 29; Dkt. 78-11 at 4. [redacted] Dkt. 67 ¶10. [redacted], *id.* ¶ 13, [redacted], *id.* ¶ 10; [redacted], *id.* ¶ 15. [redacted]. Dkt. 67-2.

*Second*, Cumulus's own declarations confirm it can cut at least $9 million in spending elsewhere, [redacted]; *see also* Dkt. 67 ¶ 29 ("[redacted]"); *see* Dkt. 68 ¶ 14 ([redacted]). Further, [redacted] Dkt. 67 ¶ 8. [redacted] *Id.*; *see also* Dkt. 60 at 12 (Cumulus has "reduced staffing [redacted]

[redacted]). [redacted] Dkt. 70-10 at 297:12-19. [redacted], Dkt. 68 ¶ 14, which would not constitute irreparable harm. *See Jackson*, 596 F.2d at 72-73 (even if "entire [stations will become] unprofitable," and Cumulus "would find it difficult to regain the business…even if it were able to resume," "we do not see why it would not be rather readily compensable in monetary damages."). [redacted]

*Third*, Cumulus relies on inapposite caselaw. To start, Cumulus's "proof" of [redacted] here falls far short. In *fuboTV*, plaintiff was armed with not only "the statements of Fubo's insiders," but "[a]mple documentary evidence kept in the ordinary course of Fubo's business," to support its claim that defendant's actions, absent injunction, "will precipitate the imminent downfall of its business." 745 F. Supp. 3d at 146. Cumulus provides no such support. Instead, Cumulus asks the Court to take its executive's word that [redacted]—which contradicts Cumulus's CEO's public statements to investors last month. *See* Dkt. 67 ¶ 35(d); *see also* Dkt. 61-1 ¶¶ 90-94 ([redacted]). Moreover, even after finding irreparable harm, the *fuboTV* Court rejected the plaintiff's efforts to rewrite the existing contracts, 745 F. Supp. 3d at 145, as Cumulus seeks here, and ordered that the existing contract terms continue, which Cumulus steadfastly resists.

Additionally, the thin support Cumulus marshals is speculative. *See* Dkt. 61-1 ¶ 82(vi). In *Texaco*, plaintiff presented evidence that its "bonds were downgraded[.]…It was forced to withdraw from the commercial paper market. Banks…would no longer lend it money on unsecured terms[,]…potential joint venturers…cancelled negotiations[, and] suppliers refused to

do business." 784 F.2d 1133, 1152 (2d Cir. 1986). And in *Tucker*, the court granted an injunction because the plaintiff demonstrated its "[c]urrent liabilities exceed[ed] current assets, and plaintiffs [we]re obligated on three loans totaling $2,245,000 all due on demand." 888 F.2d at 975. [redacted]. Dkt. 67 ¶ 10. [redacted], *see id.* ¶ 13, and Cumulus's net revenue in 2024 was $827 million, Dkt. 78-31 at 29. [redacted] Dkt. 60 at 12.

Finally, Cumulus relies, at Dkt. 60 at 16, on inapposite franchisor-franchisee cases. In *Roso-Lino v. Coca-Cola Bottling Co. of N. Y., Inc.*, Dkt. 60 at 16, plaintiff distributed *only* Coca-Cola products so it unavoidably could not operate without an injunction. 749 F.2d 124, 126 (2d Cir. 1984). Here, unlike in *Roso Lino*, Nielsen offered and continues to offer services to Cumulus, and without Nielsen Cumulus would not "stand to lose [its] business forever," especially when [redacted]. *Id*; Dkt. 70-4 116:8-16.

In any event, that Cumulus wants to cut costs is neither Nielsen's fault, nor Nielsen's responsibility. There is simply no basis for this Court to order Nielsen to bear the burden of Cumulus's cost-cutting efforts.

#### 3. Cumulus's Argument About Irreparable Harm to the Market Is Unpersuasive

Cumulus argues in a conclusory fashion that a preliminary injunction prevents harm to the market. But it does not articulate how competition would be irreparably harmed absent an injunction forcing Nielsen to offer deeper discounts. That is not surprising because Cumulus wants to save costs, not protect competition. For the same reasons, Cumulus's antitrust arguments fail on the merits. *See* Dkt. 62 at 22-23.

### B. Cumulus's Claim Fails on the Merits

As explained in Nielsen's opening brief, Cumulus pleaded a bundling claim, not a *per se* tying claim. *See* Dkt. 62 at 20-21. Cumulus also fails to plead an antitrust injury because it claims only personal economic injuries, not harm to the structure of the market. *Id.* at 23. Cumulus's brief did not address these fundamental points (each of which is fatal), but instead raised three baseless arguments.

*First*, Cumulus conflates "accepting the factual allegations of the complaint as true," Dkt. 60 at 18, with an agreement not to argue the Complaint's legal deficiencies, *id*. at 2, 17-18, 20. But Nielsen agreed only that "[w]e will operate at the PI stage under the Rule 12(b)(6) standard"—it did not waive any legal arguments about the sufficiency of the Complaint. Hr. Tr. 23:24-25. Nielsen's arguments thus appropriately assume the truth of Cumulus's allegations but demonstrate their legal insufficiency.

*Second*, even assuming the "no economic sense" test Cumulus invents, Dkt. 60 at 6-7, 21-22, is applicable—it is not—Nielsen's offers are economically rational. *Compare* Dkt. 66 ("Orszag Rep.") ¶ 59 *with Am. Mfrs. Mut. Ins. Co. v. Am. Broad.-Paramount Theatres, Inc.*, 388 F.2d 272, 284 (2d Cir. 1967) (remanding because it was "impossible to determine" justification from the record). [redacted]. *See* Dkt. 63 ¶ 7; Orszag Rep. ¶¶ 61-63. Also, [redacted] *Id.* ¶¶ 12, 66-69. Cumulus argues Nielsen does not charge any customer [redacted] for standalone Nationwide, so it must not make economic sense. Dkt. 60 at 21. [redacted]. *See* Orszag Rep. ¶ 63.

*Third*, Cumulus baselessly argues Eastlan would be foreclosed from the market. The Policy at most applies to a fraction of Nielsen's customers, *see* Dkt. 62 at 21-22, and could not deprive Eastlan of "[redacted]," *see* Orszag Rep. ¶ 24, especially [redacted], *see id.* ¶ 27 n.40. [redacted] *Id.* ¶ 38. [redacted]. *See id.* ¶¶ 39-40. In fact, [redacted] *See id.* ¶ 40.[1]

### C. The Balance Of Equities Favors Nielsen

Cumulus contends that "Nielsen faces no hardship" from an injunction. Dkt. 60 at 23. Not so. First, [redacted] Dkt. 70-4 at 10:9-12, and is distinct from, and far smaller than, Nielsen's parent company, Dkt. 63 ¶ 1. Second, Nielsen faces the same industry headwinds as Cumulus because [redacted] Orszag Rep. ¶ 68. Third, if [redacted] *See* Dkt. 70-14 at 2.

Cumulus also contends the equities tip in its favor because, [redacted] Dkt. 60 at 23. [redacted]

---

[1] Cumulus's only other foreclosure argument relies on [redacted]. Dkt. 60 at 21-22 (citing Dkt. 61-1 ¶¶ 65, 69). [redacted] *See* Orszag Rep. ¶¶ 68-69. Cumulus's make-believe [redacted] is baseless. *Id.* ¶ 62.

[redacted]. *See supra* §I.A.2. Regardless, [redacted] Cumulus's "money troubles[, which] began long ago" are not Nielsen's responsibility. *Bank of Am., N.A. v. Won Sam Yi*, 294 F. Supp. 3d 62, 81 (W.D.N.Y. 2018).

**D. The Public Interest Favors Freedom Of Contract, Not Judicial Intervention**

The public interest favors Nielsen. To start, Cumulus claims injunctive relief would "[p]reserv[e] the viability of broadcast radio stations," which "provide[] critical information for communities" because [redacted]. Dkt. 60 at 24. But Cumulus exaggerates the impact of [redacted], *see id.*, because: (1) Cumulus is not the entire radio industry—[redacted], Dkt. 70-4 at 29:20-30:3; [redacted] *supra* § I.A.2; [redacted] 2020 WL 8513509 at *1 (S.D.N.Y. Nov. 24, 2020); [redacted] Separately, just like every antitrust claimant, Cumulus claims the public interest is served through competitions in markets, Dkt. 60 at 25. But Cumulus fails to establish how the Policy harms competition, *see supra* §§ I.A.3, I.B, and an injunction would not "preserv[e]…competition" when it would simply enlist this Court to force Nielsen to sell at a lower price. Dkt. 60 at 25.

Conversely, allowing the parties the freedom to contract without judicial intervention would serve "a well-recognized public interest in enforcing contracts." *Empower Energies, Inc. v. SolarBlue, LLC*, 2016 WL 5338555, at *13 (S.D.N.Y. Sept. 23, 2016); Dkt. 62 at 25. Cumulus continues to move the goalposts for its tailor-made, Court-ordered contract and now wants the Court to write a new contract or force "reasonable" negotiations on its hand-picked terms. Dkt. 60 at 27. Inserting the Court as the central planner in the parties' contract negotiation does not serve the public interest.

## II. CUMULUS'S REQUESTED RELIEF IS NOT THE STATUS QUO

Cumulus insists it "seeks only to return to the status quo prior to the imposition" of the Policy. Dkt. 60 at 3. [redacted], *see* Dkt. 70-23 at 1—[redacted], *see* Dkt. 63-1. [redacted]. *Id.* However framed, [redacted]

Cumulus instead seeks a shifting array of options for mandatory relief, none of which is the status quo. Cumulus originally asked this Court to (1) "enjoin[]" Nielsen "from imposing any tie or constructive tie," (2) "order[]" Nielsen "to continue providing its Nationwide product… under the currently existing contract terms," and (3) "prohibit[]…retaliatory conduct." Dkt. 7-1. Now, for the first time, Cumulus shifts to demanding not only Nationwide, but also "local radio ratings data in markets selected by Cumulus…or alternatively…immediate[] negotiat[ion]." Dkt. 60 at 27. Cumulus notably drops any reference to "existing contract terms," likely because Nielsen

has already offered them, despite Cumulus's mischaracterizations. *Compare* Dkt. 7-1 *with* Dkt. 60 at 25, 27.

Cumulus nevertheless attempts to frame its request as the "status quo" by asking to return to "the world before Nielsen's Tying Policy," *i.e.*, to 2022. Dkt. 60 at 26. The world it imagines never existed. The Policy was not in effect in 2022, when the current contract was negotiated. Moreover, [redacted]. *See* Dkt. 70-10 at 151:4-153:22 ([redacted]).[2] Cumulus's attempt to characterize its request as anything other than a demand for a court-written contract is pure sophistry.

Cumulus's latest demand for an order "requiring Nielsen to immediately negotiate" is inappropriate. Dkt. 60 at 27. Nielsen is "free to choose the parties with whom [it] will deal, as well as the prices, terms, and conditions." *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 448 (2009). There is no basis to compel Nielsen to negotiate with Cumulus, let alone to reach a contract on terms Cumulus wants. Lastly, Nielsen has been negotiating with Cumulus in good faith for months, even though Cumulus has engaged in a well-orchestrated, costly lawfare assault on Nielsen. A court order was never necessary or appropriate.

## III. AN EVIDENTIARY HEARING REMAINS UNNECESSARY

Cumulus's brief, which does not argue for an evidentiary hearing, confirms there is no need for one because "the disputed facts are amenable to complete resolution on a paper record." *St. Joseph's Hosp. Health Ctr. v. Am. Anesthesiology of Syracuse, P.C.*, 131 F.4th 102, 108 (2d Cir.

---

[2] [redacted], [redacted]. Dkt. 60 at 13.

2025). Cumulus's failure to show irreparable harm is dispositive, and there are no disputed issues of fact at this stage that merit an evidentiary hearing.

Cumulus claims to be desperate to reduce its costs. Avoiding the unnecessary expense of a three-day evidentiary hearing on this clear record would be a good start.

Dated: December 1, 2025
New York, New York

Respectfully submitted,

*/s/ Jefferson E. Bell*

GIBSON, DUNN & CRUTCHER LLP

Jefferson E. Bell
Kathryn N. Salvaggio
200 Park Avenue, New York, NY 10166
Email: JBell@gibsondunn.com
Email: KSalvaggio@gibsondunn.com
Telephone: (212) 351-4000

Josh Lipton (admitted *pro hac vice*)
1700 M Street, N.W.
Washington, D.C. 20036-4504
Email: JLipton@gibsondunn.com
Telephone: (202) 955-8500

Samuel Liversidge (admitted *pro hac vice*)
333 South Grand Avenue
Los Angeles, CA 90071-3197
Email: SLiversidge@gibsondunn.com
Telephone: (213) 229-7000

Scott K. Hvidt (admitted *pro hac vice*)
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
Email: SHvidt@gibsondunn.com
Telephone: (214) 698-3100

*Attorneys for Defendant The Nielsen Company (US), LLC*

**CERTIFICATE OF COMPLIANCE**

I, Jefferson E. Bell, certify that Defendant Nielsen's Response in Opposition to Cumulus's Pre-Hearing Brief in Support of its Motion for a Preliminary Injunction complies with the requirements of Local Rule 7.1(c), as modified by § 5(A) of this Court's Individual Rules and Practices in Civil Cases.

I further certify that this memorandum of law was prepared with a computer.

I further certify that this memorandum of law contains 3,469 words and is 12 pages, including any footnotes or endnotes and excluding only those sections of the brief that are exempted under Local Rule 7.1(c). In preparing this certificate of compliance, I have relied on the word count of the word-processing system used to prepare this memorandum of law.

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing was served via email to all counsel of record.

*/s/ Kathryn N. Salvaggio*
Kathryn N. Salvaggio