UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CUMULUS MEDIA NEW HOLDINGS, INC.,

                        Plaintiff,

                  -v-

THE NIELSEN COMPANY (US) LLC,

                        Defendants.
------------------------------------------------------------------X

25-CV-08581 (JAV)

OPINION AND ORDER

JEANNETTE A. VARGAS, United States District Judge:

On December 30, 2025, the Court issued an order, ECF No. 131 ("Order"), and accompanying Opinion and Order, ECF No. 132 ("Opinion" or "Op."), granting a preliminary injunction motion filed by Plaintiff Cumulus Media New Holdings, Inc. ("Plaintiff" or "Cumulus"). On January 9, 2026, The Nielsen Company (US) LLC ("Defendant" or "Nielsen") filed a letter motion to stay the preliminary injunction pending appeal. ECF No. 142 ("Mot.") at 1. In the alternative, Nielsen requests an administrative stay while it promptly seeks a stay pending appeal from the Second Circuit. *Id.* For the following reasons, Defendant's motion for a stay pending appeal is DENIED, but Defendant's motion for an administrative stay is GRANTED.

## DISCUSSION

The Court assumes familiarity with the facts of this case. *Cumulus Media New Holdings, Inc. v. The Nielsen Company (US) LLC*, No. 25-CV-08581 (JAV), 2026 WL 63294 (S.D.N.Y. Jan. 8, 2026). As relevant here, the Opinion preliminarily enjoined Nielsen from (1) enforcing its Network Policy and (2) from charging a commercially unreasonable rate for its Nationwide

Report as a complete, standalone product. Op. at 46-47. The Court found that Cumulus was likely to succeed in its claims that Nielsen's Network Policy is a tying policy that illegally maintains Nielsen's monopoly power over local and national radio ratings data markets in violation of Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2, that Cumulus bore the balance of hardships at this juncture, that the public interest was served by a preliminary injunction, and that continued enforcement of the Network Policy would cause irreparable harm.

Courts consider four factors when assessing a motion for a stay pending appeal: (1) "the [movant's] 'strong showing that he is likely to succeed on the merits,'" (2) "irreparable injury to the [movant] in the absence of a stay," (3) "irreparable injury to the nonmoving party if a stay is issued," and (4) "the public interest." *New York v. United States Dep't of Homeland Sec.*, 974 F.3d 210, 214 (2d Cir. 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). "The first two factors are the most critical, but a stay 'is not a matter of right, even if irreparable injury might otherwise result.'" *Id.* (quoting *Nken*, 556 U.S. at 434-35). Accordingly, "a stay is 'an exercise of judicial discretion,' and '[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of discretion.'" *Id.* (quoting *Nken*, 556 U.S. at 434-35).

**A. Likelihood of Success on the Merits**

The first factor, which considers the movant's likelihood of success on the merits, weighs heavily in favor of denying the stay pending appeal. Nielsen proffers four reasons in support of this factor: (1) that the Court's treatment of Nielsen's pricing proposals as a constructive tie was improper in light of Nielsen's freedom as a monopolist and its offer to Cumulus of the Nationwide product on a standalone basis; (2) that the Court did not properly shift the burden back to the plaintiff once defendant articulated a non-pretextual business justification for its policy; (3) that Cumulus would not suffer "certain and imminent harm for which a monetary

award" could not "adequately compensate," *Wisdom Imp. Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 113 (2d Cir. 2003), and (4) that the order does not satisfy Rule 65's requirement that an injunction must "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required," Fed. R. Civ. P. 65(d)(1). Mot. at 2. The Court addresses each of these arguments in turn.

### 1. The Constructive Tie

In its motion, Nielsen renews its argument that the Network Policy is not a constructive tie because "[a]bsent conditioning, a duty to deal, or predatory pricing, a monopolist is 'free to charge whatever . . . price it would like,' even if those prices are high or disadvantageous to a particular customer." Mot. at 2 (citing *Pac. Bell Tel. Co. v. linkLine Comm'cns, Inc.*, 555 U.S. 438, 454 (2009). Nielsen's Network Policy is not "absent conditioning," however: it expressly and constructively conditions the purchase of its Nationwide product (the tying product) on the purchase of all local ratings data (the tied product). *See* Op. at 28-29 (quoting *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 461 (1992) ("A tying arrangement is 'an agreement by a party to sell one product[,] but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier.'" (citation omitted)). Radio networks like Cumulus's Westwood One cannot generate revenue from national advertising without Nielsen's Nationwide. Op. at 6-8, 41. As a monopolist with 100% market share in the national radio ratings data market, Nielsen undisputedly possesses the market power to force subscribers to purchase local radio ratings data that they would otherwise forgo through its Network Policy. *Id*. at 30. By "flatly prohibit[ing] the sale of the complete Nationwide product unless purchased with all local ratings data," *id*. at 31, the Network Policy is a paradigmatic tying policy. *Id*. at 29.

Further, Nielsen takes issue with the Court's treatment of Nielsen's offers to Cumulus as constructive ties because "Nielsen offered Cumulus the Nationwide Product on a standalone basis." Mot. at 2. Nielsen does not address the Opinion's analysis on this point, Op. at 32, in which the Court found that Nielsen's offered price for Nationwide—ten times more than Cumulus currently pays for the essential product—is a "price differential" that "has the effect of conditioning the sale or license of [that product] upon the sale or license of [other products]." *United States v. Loew's, Inc.*, 371 U.S. 38, 54 (1962), *abrogated on other grounds by Illinois Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28 (2006); Op. at 41-42 ("To be sure, Westwood One's dire financial state is not Nielsen's problem. The antitrust laws do not require Nielsen to provide Plaintiff with a product it can afford. However, where a monopolist's anticompetitive conduct results in supracompetitive prices far above what the market would otherwise bear, an antitrust injury is present").

### 2. Cumulus's Burden to Rebut Nielsen's Procompetitive Justification

Nielsen's letter motion argues that "the Court discounted Nielsen's procompetitive justifications and did not apply the burden-shifting framework" set forth in *United States v. Microsoft Corp.*, 253 F.3d 34, 58 (D.C. Cir. 2001). Mot. at 2. Nielsen contends that the Court erroneously applied the standard applicable to merger cases rather than Section 2 claims. *Id.* To the contrary, the Court explicitly applied the burden-shifting framework first set forth in *Microsoft Corp.*, 253 F.3d 34 at 58, and then further explicated in the Section 2 context by the Second Circuit in *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 658 (2d Cir. 2015). Op. at 36. Nielsen complains that the Court did not shift the burden back to Plaintiff to rebut its procompetitive justifications. Mot. at 2. Nielsen ignores that the Court examined each of Nielsen's three procompetitive justifications and found that Plaintiff met its burden of proving

4

that each was pretextual. Op. at 36-39. The Second Circuit's decision in *Schneiderman* instructs that, having found that the procompetitive justifications were pretextual, no further rebuttal or weighing is required. *Schneiderman*, 787 F.3d at 658 ("Because we have determined that Defendants' procompetitive justifications are pretextual, we need not weigh them against the anticompetitive harms."). Nielsen, which does not even cite to the Second Circuit's binding decision in *Schneiderman*, fails to demonstrate that it is likely to prevail on the merits.

   3. **Irreparable Harm to Cumulus**

Nielsen disputes that Cumulus would suffer irreparable harm because "Cumulus could simply have paid Nielsen's price and, if ultimately successful in this litigation, recovered through damages any amount deemed unlawfully excessive." Mot. at 2. As set forth at length in this Opinion, the harm that Cumulus demonstrated it would face were a preliminary injunction denied is neither quantifiable nor reversible through compensatory damages. Op. at 40-41 (citing cases in this Circuit finding that economic harm; major disruption of business; threatened loss of good will and customers, both present and potential; and loss of current or future market share constitute irreparable harm meriting injunctive relief); *see also* PX-272 (ECF No. 83) ("Jones Suppl. Decl.") ¶¶ 9-15, 28-30, 32-34 (outlining financial harm to Westwood One, damage to business relationships and reputation); PX-277 (ECF No. 61-1) ("Furchtgott-Roth Expert Report") ¶ 56 (outlining harm to Westwood One's market share from loss of advertising relationships). Further, "[f]inancial harm to Westwood One, irreparable though it may be, is not the only harm caused by Nielsen's anticompetitive policies," as anticompetitive harm independently contributes to a showing of irreparable harm. Op. at 42-43 (citing cases).

### 4. Vagueness Challenge Under Rule 65(d)(1)

Nielsen challenges the Court's injunction as insufficiently specific in violation of Rule 65. Fed. R. Civ. P. 65(d)(1). "A court is required to frame its orders so that those who must obey them will know what the court intends to forbid." *Diapulse Corp. of Am. v. Carba, Ltd.*, 626 F.2d 1108, 1111 (2d Cir. 1980) (citing *Int'l Longshoremen's Ass'n, Local 1291 v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 76 (1967)). "[B]asic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed." *Id.* (quoting *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974)).

Nielsen laments that "[a]bsent more detail on what constitutes a "commercially unreasonable" rate, the injunction is "too vague to be understood." Mot. at 2. Lucky for Nielsen, however, the Court provided more detail on this term in its Opinion: "[f]or purposes of this Order, a rate that is equal to or lower than the highest annual 2026 rate Nielsen charges any broadcaster (whether network or local) for Nationwide is presumptively reasonable." Op. at 47; *see also United States v. Glaxo Grp. Ltd.*, 410 U.S. 52, 64 (1973) (reversing district court's refusal to order "[m]andatory selling on specified terms . . . at reasonable charges [because they] are recognized antitrust remedies"); *In re Google Play Store Antitrust Litig.*, 147 F.4th 917, 951 (9th Cir. 2025) (affirming district court's decision to mandate a "reasonable fee" at "the right price level to ensure the pro-competitive function of the app-store distribution remedy").

### B. Irreparable Injury to Nielsen

The second factor weighs in favor of a stay, but the Court finds that when weighed alongside factors one, three, and four, a denial of the stay pending appeal is still warranted.

Nielsen states that by "bar[ring] Nielsen from charging a 'commercially unreasonable' price for the standalone Nationwide report," the Court is "requiring Nielsen to spend time and

incur costs associated with evaluating and attempting to implement that standard across its customer base." The Court does not take this proscription—and its impact on Nielsen's negotiating position—lightly. For the reasons stated in the Opinion, however, the balance of equities tips in Cumulus's favor on the current record and thus require an injunction against Nielsen's anticompetitive conduct. Op. at 43; *see also id.* at 45 (citing *Glaxo*, 410 U.S. at 64: "the purpose of relief in an antitrust case is so far as practicable, to cure the ill effects of the illegal conduct, and assure the public freedom from its continuance").

The Court understands that Nielsen's costs arise predominately from surveying its listeners in each individual local market, Op. at 4, and is thus sympathetic to Nielsen's concern that it "will be hindered in its ability to ensure that it can recover the costs of collecting the local radio-ratings data that make up the Nationwide report and spread those costs appropriately across the customers that use the products generated from those joint costs." ECF No. 142-1 ("Tunkel Decl.") ¶ 5. While Nielsen's necessarily dynamic pricing may determine that there is "no single commercially reasonable rate for the Nationwide report," Tunkel Decl. ¶ 7, Nielsen may not use its power as a monopolist to prevent or impede competition. *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 274 (2d Cir. 1979).

C.  The Public Interest and Irreparable Injury to Cumulus

The Court is not persuaded by Respondents' arguments that the public interest favors granting the stay pending appeal. Even apart from the public services provided by broadcast radio that Cumulus has alleged the Network Policy threatens, ECF No. 128 at ¶ 268, the public has an interest "in enforcement of the antitrust laws and in the preservation of competition." *trueEX, LLC v. MarkitSERV Ltd.*, 266 F. Supp. 3d 705, 726 (S.D.N.Y. 2017) (citation omitted); *see also F. & M. Schaefer Corp. v. C. Schmidt & Sons, Inc.*, 597 F.2d 814, 819 (2d Cir. 1979)

(consumers are irreparably harmed when price competition is eliminated, "leading to higher prices and profits . . . at the expense of a large segment of the . . . public"). As such, the Court finds that the four *Nken* factors overall weigh in favor of denying the stay pending appeal.

Accordingly, Respondents' Motion for Stay Pending Appeal is DENIED. Respondent's Motion for Administrative Stay, however, is GRANTED. Because of the timing concerns expressed by Plaintiff, and specifically the potential irreparable harm it will suffer in the absence of immediate relief, the administrative stay will be in effect only until **January 16, 2026,** to allow Respondents time to file a motion for a stay in the Second Circuit Court of Appeals. The Clerk of Court is directed to terminate ECF No. 142.

SO ORDERED.

Dated: January 12, 2026
       New York, New York

                                            JEANNETTE A. VARGAS
                                            United States District Judge