**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CUMULUS MEDIA NEW HOLDINGS INC., | |
| *Plaintiff*, | Civil Action No.: 25-cv-08581 (JAV) |
| v. | |
| THE NIELSEN COMPANY (US) LLC, | |
| *Defendant*. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS COUNTERCLAIMS**

# <u>TABLE OF CONTENTS</u>

**Page(s)**

TABLE OF AUTHORITIES ..................................................................................... ii

INTRODUCTION ....................................................................................................1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND .............................................3

LEGAL ARGUMENT...............................................................................................6

I.    THE COUNTERCLAIM'S FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT SHOULD BE DISMISSED ....................................................... 7

    A.    Nielsen's Purported Damages Are Barred by the Contract's Express Waiver of Consequential Damages............................................................ 8

    B.    Factual Testimony Incorporated into Nielsen's Counterclaims Establishes That Nielsen Suffered No Damages ........................................ 9

    C.    Nielsen's Alleged Harm and Damages Are Conclusory and Speculative ................................................................................. 10

    D.    Nielsen Does Not Establish Proximate Causation ................................... 13

II.   THE COUNTERCLAIM'S SECOND CAUSE OF ACTION FOR UNFAIR COMPETITION SHOULD BE DISMISSED .................................... 14

    A.    Nielsen's Unfair Competition Counterclaim is Duplicative of the Breach of Contract Counterclaim ...................................................... 14

    B.    Nielsen Cannot Recover Special Damages............................................. 15

    C.    Cumulus is Not a Proper Defendant for Nielsen's Unfair Competition Counterclaim..................................................................................... 16

III.  THE COUNTERCLAIM'S THIRD CAUSE OF ACTION FOR DECLARATORY JUDGMENT SHOULD BE DISMISSED............................. 17

CONCLUSION.....................................................................................................18

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................6

*Bank of America, N.A. v. Corporex Realty & Investment, LLC*,
  875 F. Supp. 2d 689 (E.D. Ky. 2012) ...............................................................11, 12

*Bausch & Lomb, Inc. v. Bressler*,
  977 F.2d 720 (2d Cir. 1992)....................................................................................7

*Chartwell RX, LLC v. Inmar, Inc.*,
  620 F. Supp. 3d 59 (S.D.N.Y. 2022)......................................................................17

*Chung v. J.H. Whitney Cap. Partners, LLC*,
  No. 24 Civ. 5864 (PAE), 2025 WL 1184722 (S.D.N.Y. Apr. 23, 2025)...................7

*Coca-Cola N. Am. v. Crawley Juice, Inc.*,
  No. 09 CV 3259 (JG) (RML), 2011 WL 1882845 (E.D.N.Y. May 17, 2011) .......15

*Continuum Grp. LLC v. 666 Performance, LLC*,
  No. 24 Civ. 5834 (LGS), 2025 WL 1489255 (S.D.N.Y. May 23, 2025)..................6

*E.J. Brooks Co. v. Cambridge Sec. Seals*,
  31 N.Y.3d 441 (2018) ...........................................................................................16

*Ebomwonyi v. Sea Shipping Line*,
  473 F. Supp. 3d 338 (S.D.N.Y. 2020), *aff'd*,
  No. 20-3344, 2022 WL 274507 (2d Cir. Jan. 31, 2022) ...........................................7

*Fruition, Inc. v. Rhoda Lee, Inc.*,
  1 A.D.3d 124 (1st Dep't 2003) ..........................................................................7, 13

*Fullsend, Inc. v. Cannafellas, Inc.*,
  No. 22-CV-2515 (ENV) (ARL), 2023 WL 2970458 (E.D.N.Y. Jan. 31, 2023)....15

*Hahn v. JetBlue Airways Corp.*,
  738 F. Supp. 3d 229 (E.D.N.Y. 2024) ..................................................................17

*Hangzhou Silk Import & Export Corp. v. P.C.B. Int'l. Indus.*,
  No. 00 CIV. 6344 (RLC), 2002 WL 2031591 (S.D.N.Y. Sept. 5, 2002) .................8

*Harris v. Am. Acct. Ass'n*, No. 5:20-CV-01057,
  2021 WL 5505515 (N.D.N.Y. Nov. 24, 2021), *aff'd in part, rev'd in part*,
  No. 22-811, 2023 WL 2803770 .......................................................................16, 17

*Heckman v. Town of Hempstead*,
　　568 F. App'x 41 (2d Cir. 2014) ................................................................3, 7

*Hudson v. Loretex Corp.*,
　　No. 95-CV-844 (RSP/RWS), 1997 WL 159282 (N.D.N.Y. Apr. 2, 1997) ........................7, 11

*In re Livent, Inc. Noteholders Sec. Litig.*,
　　151 F. Supp. 2d 371 (S.D.N.Y. June 29, 2001) ................................................6, 7

*JFK Hotel Owner, LLC v. Hilton Hotels Corp.*,
　　42 Misc. 3d 1237(A) (Sup. Ct. N.Y. Cnty. 2014) ..................................................11

*Kenford Co. v. County of Erie*,
　　67 N.Y.2d 257 (1986) ..........................................................................7, 13

*Malin v. XL Cap. Ltd.*,
　　499 F. Supp. 2d 117 (D. Conn. 2007), *aff'd,* 312 F. App'x 400 (2d Cir. 2009) ...................3, 5

*Mariah Re Ltd. v. Am. Fam. Mut. Ins. Co.*, 52 F. Supp. 3d 601 (S.D.N.Y. 2014),
　　*aff'd sub nom. Mariah Re Ltd. ex rel. Varga v. Am. Fam. Mut. Ins. Co.*,
　　607 F. App'x 123 (2d Cir. 2015) .........................................................10, 11, 12

*Mersen USA EP Corp. v. TDK Elecs. Inc.*,
　　594 F. Supp. 3d 570 (S.D.N.Y. 2022) ........................................................14, 15

*Optanix, Inc. v. Alorica Inc.*,
　　No. 1:20-cv-09660-GHW, 2021 WL 2810060 (S.D.N.Y. July 6, 2021) ...............................17

*Perry v. NYSARC, Inc.*,
　　424 F. App'x 23 (2d Cir. 2011) .................................................................10

*Rapoport v. Asia Elecs. Holding Co.*,
　　88 F. Supp. 2d 179 (S.D.N.Y. 2000) .............................................................10

*RCA Trademark Mgmt. S.A.S. v. VOXX Int'l Corp.*,
　　No. 14CV6294–LTS–HBP, 2015 WL 5008762 (S.D.N.Y. Aug. 24, 2015) ..........................14

*RIJ Pharm. Corp. v. Ivax Pharms., Inc.*,
　　322 F. Supp. 2d 406 (S.D.N.Y. 2004) .............................................................8

*SA Luxury Expeditions, LLC v. Schleien*,
　　No. 22-CV-3825 (VEC), 2022 WL 3718310 (S.D.N.Y. Aug. 29, 2022) ..............................16

*SmartStream Techs., Inc. v. Chambadal*,
　　No. 17-CV-2459 (VSB), 2018 WL 1870488 (S.D.N.Y. Apr. 16, 2018) ...............................6

*TVision Insights, Inc. v. The Nielsen Company (US), LLC*,
　　No. 25-cv-00575 (D. Del. Nov. 10, 2025) .........................................................2

*Washington v. Kellwood Co.*, No. 05 Civ. 10034 (DAB),
    2009 WL 855652 (S.D.N.Y. Mar. 24, 2009) .......................................................................15

*Weiss v. TD Waterhouse*,
    45 A.D.3d 763 (2d Dep't 2007) ..........................................................................................13

*Wenger v. Alidad*,
    265 A.D.2d 322 (2d Dep't 1999) ........................................................................................13

*WM Bang LLC v. Travelers Cas. Ins. Co. of Am.*,
    559 F. Supp. 3d 225 (S.D.N.Y. 2021) ................................................................................17

## Other Authorities

Alyssa Boyle, *Why Does Nielsen Keep Suing Its Competition?* AdExchanger (Feb.
    5, 2024), https://www.adexchanger.com/tv-2/why-does-nielsen-keep-suing-
    its-competition/ .............................................................................................................1, 2

Fed. R. Civ. Pro. 12(b)(6) ...........................................................................................................6

# INTRODUCTION

Last fall, when Cumulus Media New Holdings Inc. ("Cumulus") filed its antitrust claims against The Nielsen Company (US) LLC's ("Nielsen") anticompetitive Tying Policy, Nielsen— an undisputed monopolist—derided those claims as merely an effort to gain leverage in a simple contract dispute. But the preliminary injunction hearing demonstrated the truth: that Nielsen is an entrenched monopolist in the national radio ratings market, wielding its market power to stifle competition and extract supra-competitive prices from its customers, including Cumulus. Apparently still believing that "the best defense is a good offense," Nielsen is back with another bullying tactic designed to distract attention from its anticompetitive conduct. Nielsen now brings counterclaims against Cumulus, arguing that Cumulus is engaged in "an illicit pressure campaign" to "undermine" Nielsen's monopoly power, allegedly by providing one piece of Nielsen information to a tiny competitor.

But as a plain reading of its pleading makes clear, Nielsen's counterclaims for breach of contract, unfair competition, and declaratory judgment (the "Counterclaims") are not genuine efforts to enjoin or remedy any actual injury. Instead, they are transparent attempts to retaliate against Cumulus for bringing Nielsen's anticompetitive conduct to light, distract from Nielsen's unlawful conduct, escalate legal costs, and send a message to the market that any competitor or customer challenging it will be met with scorched-earth tactics.[1]

---

[1] Nielsen does not even attempt to explain how its requested relief, "[t]hat the Complaint against Nielsen be dismissed in its entirety, with prejudice," Answer and Counterclaims of Defendant The Nielsen Company (US), LLC, ("Countercl.") ECF No. 161 at 44, bears any connection to any purported harm Nielsen has suffered. This requested relief reveals the improper purpose of Nielsen's Counterclaims.

Such conduct is not new for Nielsen. Since 2021, it has repeatedly used litigation as a competitive weapon—suing at least four upstart competitors[2]—as part of a broader strategy to suppress competition and intimidate those who refuse to play by Nielsen's rules. In fact, one recent counter-lawsuit against Nielsen for anticompetitive conduct aptly sums up this strategy: Nielsen maintains its monopolies by "lock[ing] its customers into using Nielsen's and only Nielsen's" audience measurement services, and "if and when a competitor emerges as a potential threat, Nielsen uses its vast resources to bury it under a mountain of baseless lawsuits, without any regard to the merits of those lawsuits."[3]

This Court should reject Nielsen's tactics and dismiss its Counterclaims. Indeed, Nielsen's claimed breach of contract damages are expressly barred by the parties' contract. And even if they were not, Nielsen does not plead any actual, non-speculative damages in support of its breach of contract counterclaim, as required under New York law. In addition, Nielsen's allegations of harm are contradicted by its own pleading, and the damages it seeks are too remote to establish proximate causation. Nielsen's unfair competition counterclaim also must be dismissed because it is entirely duplicative of the contract claim, and because any unfair competition damages are barred by the express language of the Agreement. Nielsen's request for declaratory judgment fares

---

[2] Alyssa Boyle, *Why Does Nielsen Keep Suing Its Competition?,* AdExchanger (Feb. 5, 2024), https://www.adexchanger.com/tv-2/why-does-nielsen-keep-suing-its-competition/.

This article notes Nielsen's complaint against VideoAmp is the ninth patent infringement lawsuit Nielsen has brought against challengers of its monopoly in television ratings in just three years. *Id.* TVision's countersuit against Nielsen notes Nielsen has filed 12 lawsuits against challengers of its monopoly. Defendant TVision Insights Inc.'s Answer to Complaint, Affirmative Defenses, and Counterclaims, *TVision Insights, Inc. v. The Nielsen Company (US), LLC*, No. 25-cv-00575 (D. Del. Nov. 10, 2025), ECF No. 30.

[3] *Id.*, Counterclaim ¶ 3.

no better, as it is entirely duplicative of Nielsen's breach of contract claim, and must be dismissed on that basis.

Nielsen's Counterclaims are merely a retaliatory effort to gain leverage against Cumulus, increase its legal costs, and distract the Court from what this lawsuit is really about: Nielsen's anticompetitive conduct. The Court should dismiss Nielsen's Counterclaims in their entirety.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Cumulus owns a national radio network and hundreds of local radio stations across the United States. Countercl. ¶ 15. Nielsen provides national radio ratings data and local radio ratings data in numerous geographic markets. Countercl. ¶ 13. Cumulus is a customer of Nielsen's and relies on certain radio ratings data to sell advertising inventory. *See id.* ¶¶ 15, 16; *see also* Hr'g Tr. (ECF No. 147) 281:22–23 ("Radio ratings data is primarily used to sell advertising").[4]

The parties' relationship is governed by a now-expired Services Agreement (the "Agreement"). *See* Countercl. Ex. 1 (ECF No. 161-1). As relevant here, Article 5.2(b) of the Agreement ████████████████████████████████████, such that Cumulus ████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

---

[4] Nielsen's Counterclaims incorporated by reference portions of the preliminary injunction hearing transcript, particularly the testimony of Eastlan Chief Executive Officer Michael Gould. *See* Countercl. ¶ 31 n.2. As such, the Court can consider the remainder of the transcript when ruling on the instant motion to dismiss, including portions of the transcript not explicitly cited. *See Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014) (at the motion to dismiss stage, "the Court is entitled to consider facts alleged in the [counterclaims] and documents attached to it or incorporated in it by reference, [as well as] documents 'integral' to the [counterclaims] and relied upon in it."); *see also Malin v. XL Cap. Ltd.*, 499 F. Supp. 2d 117, 131 (D. Conn. 2007), *aff'd*, 312 F. App'x 400 (2d Cir. 2009) (finding that the court will consider the full text of a cited transcript in a motion to dismiss, noting that "[c]ourts have routinely held that when a complaint quotes documents only in part and omits critical portions of the documents, it is permissible for the court ruling on a motion to dismiss to consider the full texts of the quoted documents.").

 *Id.* Section 7.1 relates to , and is not applicable here. *Id.* The Counterclaims do not allege any breach of Section 7.1.

Although Nielsen's Counterclaims do not specify the law on which they are basing their counterclaims, the Agreement is governed by New York law, as set forth in Article 7.11. *Id.* In addition, Article 6.5 states that . *Id.* Nielsen does not—and cannot—allege that ███████████████████.

In October 2025, Cumulus filed this action along with a motion for preliminary injunction, challenging Nielsen's Tying Policy and other anticompetitive conduct. *See* ECF Nos. 1, 7, 8. Cumulus alleged that Nielsen, an undisputed monopolist, unlawfully conditioned the sale of its comprehensive national ratings data (the "Nationwide" product) on Cumulus's purchase of Nielsen's local radio ratings data, harming Cumulus's business. The Court ordered expedited discovery, resulting in the production and review of hundreds of exhibits and thousands of pages of evidence. The parties engaged in extensive briefing on the motion for preliminary injunction, and the Court held a three-day live evidentiary hearing, during which witnesses—including Michael Gould, Chief Executive Officer of Eastlan—testified regarding Nielsen's alleged anticompetitive conduct. The parties then submitted extensive proposed findings of fact and conclusions of law. On December 30, 2025, the District Court issued an Order granting Cumulus's motion for preliminary injunction, finding that Cumulus had shown a "substantial likelihood of

success on the merits of its Section 2 claims alleging the anti-competitiveness of Nielsen's conduct as a monopolist in the local and national radio ratings data markets." ECF Nos. 132, 133 at 20.

On February 2, 2026, Nielsen filed its answer to Cumulus's complaint, along with counterclaims alleging breach of contract, unfair competition, and requesting a declaratory judgment that Cumulus breached its Service Agreement with Nielsen. *See* ECF No. 161. These counterclaims appear to be based on one email that Pierre Bouvard, a Cumulus employee, allegedly sent to Mr. Gould. Countercl. ¶ 31. Nielsen does not allege that it provided notice and an opportunity to cure ███████████████████████████. In addition, Nielsen does not allege that any data sharing is ongoing.

Nielsen's Counterclaims appear to rest on two theories of harm stemming from this email. First, Nielsen alleges it was harmed because Eastlan "obtained an unfair competitive advantage" through "improper access" to data that Eastlan otherwise would "not have had access to[,]" allegedly using that data to "enhance its products and marketing efforts." Countercl. ¶¶ 31, 33. Second, Nielsen speculates that it could someday "suffer a disadvantage in the marketplace as competitors steal Nielsen's confidential information, thereby gaining an advantage at Nielsen's expense." *Id.* ¶ 33.

Nielsen's Counterclaims expressly incorporate by reference Mr. Gould's testimony at the December 2025 evidentiary hearing. Countercl. ¶ 31 n.2.[5] At the hearing—under questioning by Nielsen's counsel—Mr. Gould testified that he had not viewed any data that Nielsen alleges was shared in Mr. Bouvard's email. Hr'g Tr. 323:11–16. (testifying he had not seen a spreadsheet

---

[5] Although Nielsen purports to incorporate only unspecified "public portions" of Mr. Gould's testimony, the entire transcript is incorporated, and the Court can consider any portion of it. *See Malin*, 499 F. Supp. 2d at 131 ("when a complaint quotes documents only in part and omits critical portions of the documents, it is permissible for the court ruling on a motion to dismiss to consider the full texts of the quoted documents.").

attached to Mr. Bouvard's email); 323:19–24 (testifying he had not seen a PowerPoint attached to

Mr. Bouvard's email). Mr. Gould further testified that Eastlan has received similar Nielsen data

previously as such data has been provided by clients and advertising agencies. Hr'g Tr. 325:3–9.

("Q: So in your mind you previously had Nielsen ratings data? A: We've seen over the years,

we've seen some Nielsen data for sure. Q: How did you obtain that? A: It's come from a variety

of different ways, but generally it comes from a client. Many times comes from—actually more

often comes from an advertising agency with a question."). And Mr. Gould testified that he already

knew Eastlan's data was comparable to Nielsen's "not specifically because of Cumulus," but

because "[w]e have been doing this a while." Hr'g Tr. 322:11–15.

## <u>LEGAL ARGUMENT</u>

Courts evaluate a motion to dismiss a counterclaim under Federal Rule of Civil Procedure

12(b)(6) using the same standard as a motion to dismiss a complaint. *Continuum Grp. LLC v. 666*

*Performance, LLC*, No. 24 Civ. 5834 (LGS), 2025 WL 1489255, at *1 (S.D.N.Y. May 23, 2025).

A counterclaim-defendant prevails on a motion to dismiss if the claim against it does not "contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*SmartStream Techs., Inc. v. Chambadal*, No. 17-CV-2459 (VSB), 2018 WL 1870488, at *3

(S.D.N.Y. Apr. 16, 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While a court

should accept the counterclaimant's well-pleaded factual allegations as true, it need not follow that

course for any of the counterclaimant's legal conclusions. *See id*. "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*,

556 U.S. at 678.

In addition, a court need not "accept as truth conflicting pleadings . . . that are contradicted

either by statements in the complaint itself or by documents upon which its pleadings rely, or by

facts of which the court may take judicial notice." *In re Livent, Inc. Noteholders Sec. Litig.*, 151

F. Supp. 2d 371, 405–06 (S.D.N.Y. June 29, 2001). The court is entitled to "consider facts alleged in the [counterclaims] and documents attached to it or incorporated in it by reference, [as well as] documents 'integral' to the [counterclaims] and relied upon in it." *Heckman*, 568 F. App'x at 43.

## I.    THE COUNTERCLAIM'S FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT SHOULD BE DISMISSED

To state a claim for breach of contract under New York law, a plaintiff must plead (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) resulting damages. *See Ebomwonyi v. Sea Shipping Line*, 473 F. Supp. 3d 338, 347 (S.D.N.Y. 2020), *aff'd*, No. 20-3344, 2022 WL 274507 (2d Cir. Jan. 31, 2022); *Chung v. J.H. Whitney Cap. Partners, LLC*, No. 24 Civ. 5864 (PAE), 2025 WL 1184722, at *3 (S.D.N.Y. Apr. 23, 2025). Resulting damages mean that the plaintiff must show that it suffered an actual injury that was "caused by" and is "directly traceable" to the defendant's breach. *Bausch & Lomb, Inc. v. Bressler*, 977 F.2d 720, 731 (2d Cir. 1992); *Kenford Co. v. County of Erie*, 67 N.Y.2d 257, 261 (1986) (stating that "damages may not be merely speculative, possible or imaginary, but must be reasonably certain and directly traceable to the breach [of contract], not remote or the result of other intervening causes."). Speculative, remote, or hypothetical damages are insufficient to survive a motion to dismiss. *See Kenford Co., Inc.*, 67 N.Y.2d at 261; *Hudson v. Loretex Corp.*, No. 95-CV-844(RSP/RWS), 1997 WL 159282, at *5 (N.D.N.Y. Apr. 2, 1997) (dismissing breach of contract claim that contained allegations "too speculative in nature to constitute a valid damages claim"); *see also Fruition, Inc. v. Rhoda Lee, Inc*., 1 A.D.3d 124, 124 (1st Dep't 2003) (damages for breach of contract "must be proximate and certain, or capable of certain ascertainment, and not remote, speculative or contingent.").

**A.    Nielsen's Purported Damages Are Barred by the Contract's Express Waiver of Consequential Damages**

Nielsen's allegations are vague about the harm it claims to have suffered from Cumulus's alleged breach. But Nielsen appears to be asserting that it has already suffered—or might suffer in the future—harm in terms of either loss of market share, lost customers, lost sales, lost goodwill, or diminution in business reputation. Countercl. ¶¶ 31–33, 46 (referencing harm to Nielsen's relationships with customers, "disadvantage in the marketplace," "undermining Nielsen's business"). But each of those is a classic form of consequential damages. *See Hangzhou Silk Import & Export Corp. v. P.C.B. Int'l. Indus.*, No. 00 CIV. 6344 (RLC), 2002 WL 2031591, *7 (S.D.N.Y. Sept. 5, 2002) ("Under New York law, consequential damages for a breach of contract or warranty claim can include loss of goodwill, including the loss of customers, future profits, and harm to business reputation.") (citing *Toltec Fabrics, Inc. v. August Inc*., 29 F.3d 778, 780 (2d Cir.1994)); *RIJ Pharm. Corp. v. Ivax Pharms., Inc.*, 322 F. Supp. 2d 406, 415 (S.D.N.Y. 2004) (recognizing loss of market share as a type of consequential damages).

Claims for consequential damages are expressly prohibited by the Agreement. Section 5.2(b) of the Agreement provides that ███████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ Countercl. Ex. 1.[6] The Counterclaim's repeated references to harm to Nielsen's business, competitive disadvantage, and harm to Nielsen's relationships with customers, e.g., Countercl. ¶¶ 31–33, 46, all fall squarely within ███████████████████████. Likewise, any claim for future lost

---

[6] Nielsen does not allege that Cumulus breached Section 7.1 of the Agreement, and that section is not applicable here. Section 7.1 relates to ███████████████████████████████████████ ████████████████████████████

profits, loss of market share, or anticipated competitive disadvantage is similarly foreclosed ███

███████████████████████████████. Given this clear prohibition on the only type of

damages claim brought under Nielsen's breach of contract claim, that claim must be dismissed.

### B. Factual Testimony Incorporated into Nielsen's Counterclaims Establishes That Nielsen Suffered No Damages

Even if Nielsen were allowed to pursue its claim for consequential damages, its breach of

contract claim must still be dismissed. Nielsen asserts that but for the alleged breach by Cumulus,

Eastlan would not have had access to Nielsen information, and that Eastlan actually used this

information to "benchmark" and "enhance its products and marketing efforts." Countercl. ¶¶ 31–

33. According to Nielsen, Eastlan—a tiny rival—used its data to gain "an unfair competitive

advantage" against the monopolist, Nielsen. *See id.* ¶ 33.

Nielsen's allegation is belied by its own pleadings. Nielsen's Counterclaims expressly

incorporate the testimony of Eastlan's CEO, Michael Gould. Countercl. ¶ 31 n.2. Mr. Gould

testified during the preliminary injunction hearing that he did not even look at the information in

Mr. Bouvard's email. *See* Hr'g Tr. 323:10–16; 323:19–24 (testifying that he did not even see the

Nielsen data allegedly shared by Cumulus). Moreover, Eastlan has received similar Nielsen data

from other clients and advertising agencies. Hr'g Tr. 325:3–9. ("Q: So in your mind you previously

had Nielsen ratings data? A: We've seen over the years, we've seen some Nielsen data for sure.

Q: How did you obtain that? A: It's come from a variety of different ways, but generally it comes

from a client. Many times comes from—actually more often comes from an advertising agency

with a question."). And the data allegedly sent by Cumulus could not have provided Eastlan with

any competitive advantage over Nielsen; Eastlan already knew its data was comparable to

Nielsen's. *Id.* 322:11–15 ("Q. Eastlan knows its rating data is comparable to Nielsen because

Cumulus has shared Nielsen's ratings data with you, correct? A. We know the data is comparable. No, not specifically because of Cumulus. We have been doing this a while.").

Mr. Gould's testimony must be taken as true. It is well-established that if a plaintiff's allegations are contradicted by a document incorporated into the complaint, those allegations are insufficient to defeat a motion to dismiss. *See Perry v. NYSARC, Inc.*, 424 F. App'x 23, 25 (2d Cir. 2011) (holding that although "the court must generally accept as true all of the factual assertions in the complaint . . . there is a narrow exception to this rule for factual assertions that are contradicted by the complaint itself, by documents upon which the pleadings rely, or by facts of which the court may take judicial notice."); *Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179 (S.D.N.Y. 2000) (dismissing complaint that contained allegations that were contradicted by statements in the Prospectus on which the plaintiff's claim relied).

Mr. Gould's testimony establishes that any purported breach by Cumulus had no impact on Eastlan's actions, and therefore cannot have caused any harm or damages. As such, Nielsen has failed to state a claim because any breach by Cumulus was "simply irrelevant." *See Mariah Re Ltd. v. Am. Fam. Mut. Ins. Co.*, 52 F. Supp. 3d 601, 614 (S.D.N.Y. 2014), *aff'd sub nom. Mariah Re Ltd. ex rel. Varga v. Am. Fam. Mut. Ins. Co.*, 607 F. App'x 123 (2d Cir. 2015) (holding that plaintiff failed to allege damages because any alleged breach was "simply irrelevant" where plaintiff failed to show the breach had any effect on the outcome).

### C.    Nielsen's Alleged Harm and Damages Are Conclusory and Speculative

Nielsen's breach of contract counterclaim is also fatally deficient because it fails to allege non-speculative, concrete harm and damages. First, Nielsen alleges that Eastlan used Nielsen data obtained from Cumulus to "enhance its products and marketing efforts." Countercl. ¶ 33. But Nielsen points to no instance in which Eastlan actually used any information from Cumulus, let alone used the information to solicit Nielsen's customers, win business, or otherwise impact

Nielsen's market positions. Nor does Nielsen provide any factual allegations showing that it has actually suffered any harm. Because Nielsen has "failed to come forward with evidence sufficient to demonstrate damages flowing from the breach alleged" and relies, instead, on wholly speculative theories of damages, dismissal of the breach of contract claim is in order. *Mariah Re Ltd.*, 52 F. Supp. at 614; *Hudson*, 1997 WL 159282 at *5.

Unable to allege any facts indicating that it was harmed by any actual use by Eastlan of Nielsen data, Nielsen is effectively left with an assertion that it has been harmed simply because Eastlan allegedly obtained "improper access to Nielsen's" information that Eastlan would not have had otherwise. Countercl. ¶¶ 31, 33. But Nielsen's conclusory allegations that a competitor's mere "access" to information constitutes harm are insufficient to establish damages in a claim for breach of contract. *See JFK Hotel Owner, LLC v. Hilton Hotels Corp*., 42 Misc. 3d 1237(A), *7 (Sup. Ct. N.Y. Cnty. 2014) (dismissing a breach of contract claim because, *inter alia*, Plaintiff alleged that Defendant disseminated confidential information in violation of a loan agreement, but could not allege any resulting damages.)

Nielsen's theories of harm resemble those rejected as insufficient to survive a motion to dismiss in *Bank of America, N.A. v. Corporex Realty & Investment, LLC*, 875 F. Supp. 2d 689 (E.D. Ky. 2012). In *Bank of America,* the defendants countersued the plaintiff for breach of contract for improperly disclosing confidential leasing information to third parties. Defendants alleged they suffered harm because the inappropriate disclosures themselves constituted harm, the exposure of this information "would result in significant economic harm" to the Defendants, and the disclosure gave third parties "an unfair competitive advantage against Defendants." *Id.* at 703 The court dismissed the case because there was no allegation that any third party had "actually used this information against" the Defendants. *Id*. at 704. As the court explained, a party "cannot

11

merely plead facts from which damages may be implied, but rather Defendants are required to identify what those damages actually are." *Id.*

The absence of any plausible harm from Eastlan having mere "access" to Nielsen data it allegedly would not have access to otherwise, Countercl. ¶ 31, is underscored by the testimony of Eastlan's CEO, Michael Gould. Mr. Gould confirmed that Eastlan routinely receives Nielsen data from a variety of sources in the industry. According to Mr. Gould, "over the years, we've seen some Nielsen data for sure," and that it "comes from a variety of different ways, but generally it comes from a client. Many times comes from—actually more often comes from an advertising agency with a question." Hr'g. Tr. 325:3–12. And in any event, as discussed above, Mr. Gould made clear that he did not even look at the attachment to Mr. Bouvard's email, much less use the Nielsen data to build or operate Eastlan's business. *See id.* at 324:8–11 ("I didn't look at it, but yeah, I must have received it. I try to be courteous. When people send me things, I try to recognize them. I'm also busy and I must admit I don't look at every attachment on every e-mail. So I didn't.").

Second, Nielsen also speculates that it "will suffer a disadvantage in the marketplace" as other unspecified "competitors steal Nielsen's confidential information, thereby gaining an advantage at Nielsen's expense." Countercl. ¶ 33. But this speculative concern has nothing to do with the alleged breach Nielsen alleges—the purported email from Mr. Bouvard at Cumulus to Eastlan. Countercl. ¶ 31. Nielsen's failure to allege facts "sufficient to demonstrate damages flowing from the breach alleged" requires dismissal as well. *Mariah Re Ltd.*, 52 F. Supp. at 614. Moreover, Nielsen's assertion is entirely hypothetical and unsupported by any factual allegations that any competitor is likely to use, or even have access to, Nielsen's information in the future. For example, Nielsen does not allege that any customer has indicated an intent to switch to Eastlan or

some other unspecified competitor, that any contract is at risk, or that any future business opportunity is in jeopardy as a result of Eastlan's receipt of Mr. Bouvard's email. Such conjectural allegations of possible future injury do not satisfy the pleading standard for contract damages. *See Kenford Co.*, 67 N.Y.2d at 261 ("damages may not be merely speculative, possible or imaginary.").

### D.    Nielsen Does Not Establish Proximate Causation

Even if Nielsen's damages were not conclusory and speculative, its breach of contract counterclaim still fails because it does not plausibly allege that any harm and damages—past or future—were proximately caused by Cumulus's alleged breach. "To satisfy the damages element of a cause of action for breach of contract, the pleadings must allege that the breach directly and proximately caused the plaintiff's injury." *Weiss v. TD Waterhouse*, 45 A.D.3d 763, 764 (2d Dep't 2007) (internal quotations omitted). This requires a showing that the damages were "not remote or the result of other intervening causes." *Wenger v. Alidad*, 265 A.D.2d 322, 323 (2d Dep't 1999).

Nielsen's theories of harm are not predicated on any direct action by Cumulus, but on independent, hypothetical actions of Eastlan. For example, Nielsen alleges that "access to and analysis of Nielsen Information allows Eastlan to benchmark against Nielsen Information" and then "market its data to customers." Counterclaim ¶¶ 5, 32. But this claim relies on a chain of hypothetical and contingent intervening events that might or might not happen, and that Cumulus cannot control—that Eastlan *might* use the information, that such use *might* improve Eastlan's product, that customers *might* then choose Eastlan over Nielsen because of that use, and that this *might* result in harm to Nielsen. This is not a direct or proximate causal link, but rather a series of hypothetical possibilities, none of which are actually alleged to have occurred.[7] *See Fruition, Inc.*, 1 A.D.3d at 125 (damages that are "remote, speculative, or contingent" are not recoverable).

---

[7] Mr. Gould's testimony, incorporated by reference into the complaint, makes clear that Eastlan has not made any meaningful inroads into Nielsen's market shares, and Nielsen has not identified

## II.    THE COUNTERCLAIM'S SECOND CAUSE OF ACTION FOR UNFAIR COMPETITION SHOULD BE DISMISSED

Nielsen's unfair competition counterclaim should be dismissed because it is duplicative of the breach of contract counterclaim, requires special damages that Nielsen is barred from recovering, and in any event is not properly asserted against Cumulus.

### A.    Nielsen's Unfair Competition Counterclaim is Duplicative of the Breach of Contract Counterclaim

An unfair competition claim that is based on the same conduct underlying a breach of contract claim must be dismissed as duplicative where the plaintiff has already pled the breach of contract claim. *See Mersen USA EP Corp. v. TDK Elecs. Inc.*, 594 F. Supp. 3d 570, 586 (S.D.N.Y. 2022) (dismissing unfair competition claim as duplicative because it was based on the same alleged misuse of confidential information underlying the breach of contract claim); *RCA Trademark Mgmt. S.A.S. v. VOXX Int'l Corp.*, No. 14CV6294–LTS–HBP, 2015 WL 5008762, at *5 (S.D.N.Y. Aug. 24, 2015) ("It is well-settled, however, that no claim [for unfair competition] lies where its underlying allegations are merely a restatement, albeit in slightly different language, of the 'implied' contractual obligations asserted in the cause of action for breach of contract.") (quoting *Orange County Choppers, Inc. v. Olaes Enterprises, Inc.*, 497 F. Supp. 2d 541, 558 (S.D.N.Y. 2007)). Nielsen's unfair competition counterclaim is based on the same alleged conduct as its breach of contract counterclaim—namely, the allegation that Cumulus breached the Agreement by sharing data with Eastlan. Countercl. ¶¶ 44, 50. As such, the unfair competition claim is entirely duplicative and must be dismissed.

---

any actual harm resulting from Eastlan's alleged access to its data such as a loss of a customer. *See* Hr'g Tr. 302:20–24 ("My original objective [for Eastlan] was to, in one year, I wanted to have the revenue of our company equal to the published salary of the CEO of Nielsen. . . . [W]e haven't been able to do that yet."). Nielsen, meanwhile, remains a thriving monopolist, and has not pointed to any lost business or competitive injury attributable to Eastlan.

Nielsen's assertions that Cumulus acted "willful[ly] and deliberate[ly]" or was "motivated by its own self-interest," Countercl. ¶¶ 50, 51, do not distinguish the unfair competition counterclaim from the breach of contract counterclaim. *See Mersen*, 594 F. Supp. 3d at 587 ("The Court need not credit Plaintiff's conclusory contention … that any confidentiality obligations [the defendant] ignored were 'willful[ ] and in bad faith.'" (citations omitted)); *see also Washington v. Kellwood Co.*, No. 05 Civ. 10034 (DAB), 2009 WL 855652, at *8 (S.D.N.Y. Mar. 24, 2009) (rejecting plaintiffs' argument that "there is a material difference between disclosure of confidential information and misappropriation of confidential information" where the parties' agreement limited both use and disclosure of confidential information).

Because Nielsen does not, and cannot, plead any additional facts basing its unfair competition claim on conduct distinct from the breach allegations, its unfair competition counterclaim is duplicate and should be dismissed.

## B.    Nielsen Cannot Recover Special Damages

Nielsen's unfair competition claim also must be dismissed because Nielsen's damages claim is barred by the Agreement. A "claim for unfair competition under New York law must allege special damages such as direct financial loss, lost dealings, or an accounting of the profits resulting from the anticompetitive acts at issue." *Coca-Cola N. Am. v. Crawley Juice, Inc.*, No. 09 CV 3259 (JG) (RML), 2011 WL 1882845, at *6 (E.D.N.Y. May 17, 2011) (citations omitted); *see also Fullsend, Inc. v. Cannafellas, Inc.*, No. 22-CV-2515 (ENV) (ARL), 2023 WL 2970458, at *5 (E.D.N.Y. Jan. 31, 2023), *R&R adopted*, (E.D.N.Y. Dec. 13, 2023) ("a claim for unfair competition under New York law must allege special damages by identifying actual losses and their causal relationship to the alleged tortious act.").

But Nielsen's contract with Cumulus ███████████████████████████████ ███████████████████████████████████████████████. *See* Section 5.2(b) ███████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████. Because Nielsen is ███████████████████████████████████, and its unfair competition claim requires Nielsen to allege special damages, the unfair competition claim must be dismissed. *See SA Luxury Expeditions, LLC v. Schleien*, No. 22-CV-3825 (VEC), 2022 WL 3718310, at \*4 (S.D.N.Y. Aug. 29, 2022) (dismissing unfair competition claim for failure to allege special damages and holding that, *inter alia*, "an unfair competition claim must allege special damages resulting from, for example, direct financial loss, lost dealings, or an accounting of the profits caused by the anticompetitive acts at issue.") (citation and internal quotations omitted).

In any event, even if Nielsen was not ████████████████████████, its counterclaims have not sufficiently alleged any damages at all—as required for an unfair competition claim. Nielsen does not allege facts that would support any claim for damages, such as lost contracts, lost clients, or lost revenue; facts showing it will suffer any such losses; or facts showing that any such harm was proximately caused by Cumulus. *See id*; *E.J. Brooks Co. v. Cambridge Sec. Seals*, 31 N.Y.3d 441, 449 (2018) ("[D]amages in unfair competition cases should correspond to plaintiff's losses [that] were a proximate result of defendants' conduct.") (citations and internal quotations omitted). Nielsen's unfair competition claim must be dismissed on that ground as well.

### C.    Cumulus is Not a Proper Defendant for Nielsen's Unfair Competition Counterclaim

Finally, Nielsen's unfair competition counterclaim must be dismissed because under New York law, it can only be brought by a competitor. *Harris v. Am. Acct. Ass'n*, No. 5:20-CV-01057 (MAD/ATB), 2021 WL 5505515, at \*13 (N.D.N.Y. Nov. 24, 2021), *aff'd in part, rev'd in part*, No. 22-811, 2023 WL 2803770 (dismissing unfair competition claim because "[t]here is no

16

question that Plaintiff and Defendant [] are not direct (or even indirect) competitors"); *Chartwell RX, LLC v. Inmar, Inc.*, 620 F. Supp. 3d 59, 78–79 (S.D.N.Y. 2022) (dismissing "misappropriation" unfair competition claim because the plaintiff and defendant were not competitors). Nielsen does not allege that Cumulus and Nielsen are competitors or that they compete in any capacity. Nielsen's Counterclaims make clear that Nielsen is a consumer research company, while Cumulus is a national communications network and radio station operator. Countercl. ¶¶ 12, 15–16. The absence of any allegation of competition between the parties is fatal to Nielsen's unfair competition counterclaim.

## III. THE COUNTERCLAIM'S THIRD CAUSE OF ACTION FOR DECLARATORY JUDGMENT SHOULD BE DISMISSED

Nielsen's counterclaim seeking a declaratory judgment that Cumulus breached its contract is entirely duplicative of its breach of contract counterclaim and should be dismissed. It is well-settled that a declaratory judgment is inappropriate where it is based on the same facts and seeks the same relief as a breach of contract claim. *See WM Bang LLC v. Travelers Cas. Ins. Co. of Am.*, 559 F. Supp. 3d 225, 234 n.2 (S.D.N.Y. 2021) ("The law is clear that a request for a declaratory judgment must be dismissed if it is merely duplicative of a plaintiff's breach of contract claim.") (internal quotation omitted); *Optanix, Inc. v. Alorica Inc.*, No. 1:20-cv-09660-GHW, 2021 WL 2810060, at *3 (S.D.N.Y. July 6, 2021) ("Courts reject declaratory judgment claims when other claims in the suit will resolve the same issues, because, under such circumstances, a declaratory judgment will not serve any useful purpose.") (citation and internal quotations omitted); *see also Hahn v. JetBlue Airways Corp.*, 738 F. Supp. 3d 229, 237 (E.D.N.Y. 2024) (holding that a declaratory judgment claim is duplicative and subject to dismissal when it is premised on the same facts and seeks the same damages as a breach of contract claim, as any favorable resolution of the contract claim would necessarily resolve the declaratory judgment issues). The parties' rights and

obligations under the Agreement will necessarily be determined by the breach of contract counterclaim.

## **CONCLUSION**

For these reasons, and for those set forth above, the Court should dismiss Nielsen's Counterclaims with prejudice.

Dated: March 4, 2026                                     Respectfully submitted,

*/s/ Jennifer Fleury*

Jennifer Fleury (*pro hac vice admitted*)
Charles Loughlin (*pro hac vice admitted*)
Alisa Lu (*pro hac vice admitted*)
Jonathan Sussler (*pro hac vice admitted*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
jennifer.fleury@hoganlovells.com
chuck.loughlin@hoganlovells.com
alisa.lu@hoganlovells.com
jonathan.sussler@hoganlovells.com

Claude G. Szyfer
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, N.Y. 10017
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
claude.szyfer@hoganlovells.com

*Counsel for Plaintiff*
*Cumulus Media New Holdings Inc.*

## **WORD COUNT CERTIFICATION**

I hereby certify that this Memorandum of Law complies with Local Rule 7.1(c) of the United States District Court for the Southern District of New York and this Court's Individual Rule 5(A). This certificate certifies that the document complies with the word count limit. Compliance relied on the word count of the word-processing system used to prepare the document. The total number of the words in this Memorandum, exclusive of the caption, table of contents, table of authorities, and signature block is 5,652 words.

Dated:    March 4, 2026

*/s/ Jennifer Fleury*
Jennifer Fleury